UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1988
_____

SAMSUNG FIRE AND MARINE INSURANCE CO., LTD (U.S. BRANCH);
HARLEYSVILLE PREFERRED INSURANCE COMPANY

v.

RI SETTLEMENT TRUST; ACE PROPERTY AND CASUALTY INSURANCE COMPANY; NATIONWIDE MUTUAL INSURANCE COMPANY; PHILADELPHIA INDEMNITY INSURANCE COMPANY; CAPITOL SPECIALTY INSURANCE CORPORATION

RI Settlement Trust,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-04365)
District Judge: Honorable Chad F. Kenney

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on April 29, 2024

Before: KRAUSE, CHUNG, and RENDELL, *Circuit Judges*.

_____

PETITION FOR CERTIFICATION OF QUESTION OF STATE LAW
_____

To the Honorable Justices of the Supreme Court of Pennsylvania:

In this declaratory judgment action, we are asked to decide whether, under

Pennsylvania state law, commercial liability insurers are obligated to defend and

indemnify a motel alleged to have engaged in conduct that would violate Pennsylvania's anti-trafficking law, which criminalizes: (1) "harbor[ing]" or "maintain[ing]" a person with "reckless[] disregard[]" to the fact that she will be subject to sex trafficking and (2) "knowingly" benefitting from such trafficking.  18 Pa. Cons. Stat. § 3011.  Appellants UFVS Management Co., Roosevelt Motor Inn, Inc., Roosevelt Inn, LLC, and Yagna Patel (together, "Roosevelt")[1] contend that Appellee insurance companies Samsung Fire and Marine Insurance Co. ("Samsung"), Nationwide Mutual Insurance Co. and Harleysville Preferred Insurance Co. ("Nationwide"), and ACE Property and Casualty Insurance Co. ("ACE," and together, "the Insurers") owe them this duty because Pennsylvania law "supports enforcement of a broad duty to defend in liability insurance policies, . . . including where civil actions allege both potentially negligent conduct and potentially intentional or criminal conduct."  Opening Br. 14.  The Insurers, meanwhile, argue that state public policy abrogates the duty to defend and indemnify where a policyholder is alleged to have engaged in the type of activity at issue here.

Pennsylvania courts have not articulated the full scope of the public policy exception to an insurer's duty to defend and indemnify in this context, rendering uncertain the proper resolution of the issue presented in this appeal.  The matter is critically important to the state, trafficking victims, and the insurance industry more broadly, and its resolution would allow us to promptly dispose of similar suits, several of

---

[1] While this litigation was pending, Roosevelt Inn, LLC, and Roosevelt Motor Inn, Inc., filed for bankruptcy.  We granted the Roosevelt parties' motion to substitute the RI Settlement Trust in for them as their successor-in-interest in this litigation.  For clarity, however, we will continue to refer to Appellants as "Roosevelt."

2

which have already passed before this Court. We therefore respectfully request that the Supreme Court of Pennsylvania grant this petition, which we submit pursuant to Third Circuit L.A.R. Misc. 110.1 and in accordance with 210 Pa. Code § 3341.

## I. Background

A person commits a first-degree felony in Pennsylvania if he "harbors . . . or maintains" an individual and "knows or recklessly disregards that the individual will be subject to sexual servitude," i.e., enables sex trafficking. 18 Pa. Cons. Stat. § 3011(a)(1). He also commits a first-degree felony if he "knowingly benefits financially . . . from any act that facilitates" such servitude. *Id.* § 3011(a)(2). The penalty for committing either of these crimes is higher if the trafficking victim is a minor. *See id.* §§ 1103, 3011(b).

In suits currently pending in the Philadelphia County Court of Common Pleas, four women allege that, beginning in 2012, Roosevelt negligently failed to prevent them from being subject to sex trafficking. According to their complaints, Roosevelt and its employees ignored blatant evidence suggesting that the women, who were underage at the time, were being forced to have commercial sex against their will. This evidence included traditional markers of prostitution—rooms filled with used condoms, sexually revealing clothing, loitering men, and payments to the motel in cash—in addition to specific evidence of sex trafficking, which included the women's youthful appearance, their demonstrated "fear and anxiety," and visibly aggressive behavior toward the girls on the part of the traffickers, App. 96, 127, 186, 242.

Those state court actions gave rise to the federal insurance-coverage suit that underlies this appeal. During the period covered by the women's allegations, Roosevelt

3

maintained commercial general liability and umbrella insurance policies with Samsung, Nationwide, and ACE. These policies insured the motel against legal liability for bodily injury and property damage. In 2018, Samsung sued Roosevelt in the United States District Court for the Eastern District of Pennsylvania, seeking a declaratory judgment that Samsung has no duty to defend or indemnify Roosevelt in the underlying cases. Over the next few years, the action expanded to cover claims, counterclaims, and crossclaims by and against Roosevelt and the rest of the Insurers.[2] These claims each hinged on the same question: whether the Insurers owed a duty to defend and indemnify Roosevelt against the allegations that it enabled and profited from sex trafficking on its premises. The Insurers argued that the language of the insurance contracts and Pennsylvania public policy abrogated the duty to defend; Roosevelt asserted that the claims fell within the plain language of the contracts and that the underlying complaints did not allege criminal conduct that is uninsurable as against state public policy.

The District Court agreed with the Insurers. Citing to the Pennsylvania Supreme Court's decision in *Minnesota Fire & Casualty Co. v. Greenfield*, 855 A.2d 854 (Pa. 2004), the District Court held that state public policy bars insurance coverage where, as here, an entity is alleged to have engaged in activity constituting "particularly harmful criminal conduct," *Samsung Fire & Marine Ins. Co. v. UFVS Mgmt. Co.*, No. 18-cv-

---

[2] This action also includes claims by and against Fourth-Party Defendant Philadelphia Indemnity Insurance Co. and Fifth-Party Defendant Capitol Specialty Insurance Corp., claims that were not yet briefed when the District Court entered the order on appeal here. Because that order functionally mooted those additional parties' claims, all parties stipulated that the Court should enter a final judgment to facilitate a prompt appeal.

04365, 2023 WL 2574971, at *8 (E.D. Pa. Mar. 20, 2023).[3] It therefore entered judgment in favor of the Insurers, and Roosevelt appealed.

## II. Certification Is Warranted

Various considerations inform this Court's decision to certify a question of law to a state's highest court. Most importantly, we will certify a question only "if we determine that we cannot predict how a state court would rule" on the issue. *United States v. Defreitas*, 29 F.4th 135, 141 (3d Cir. 2022). We account for an issue's importance, both to the public and to the state itself; matters of state constitutional law or questions involving "competing state public policy interests" are particularly appropriate for certification. *Id.* at 142. The principle of judicial economy also enters our calculus, weighing in favor of certification when the resolution of the relevant issue would expedite future cases without needlessly delaying a decision in the present matter. *Id.*

Having weighed these factors, we believe it appropriate to seek certification from the Pennsylvania Supreme Court as to two questions of law presented by this case: (1) whether Pennsylvania's public policy against enabling and profiting from sex trafficking, evidenced by 18 Pa. Cons. Stat. § 3011(a), abrogates an insurer's duty to defend and indemnify an insured party against such allegations; and if so, (2) whether the duty is abrogated only when the insured is alleged to have engaged in "intentional" conduct, *cf. Erie Ins. Exch. v. Moore*, 228 A.3d 258, 271 (Pa. 2020), or also when the

---

[3] The District Court declined to address whether the language of the insurance policies themselves relieved the Insurers of the duty to defend. *UFVS Mgmt. Co.*, 2023 WL 2574971, at *5.

insured allegedly (i) exhibited "reckless[] disregard[]" that a person would be subject to sexual servitude or (ii) "knowingly benefit[ed] financially" from such activity, 18 Pa. Cons. Stat. § 3011(a).  We address each certification factor below.

    A.    *Public Policy*

        1.    Uncertainty in the Resolution of This Issue

We would welcome the Pennsylvania Supreme Court's guidance as to whether state public policy can ever abrogate an insurer's duty to defend and indemnify where, as here, an insured's alleged conduct violates Pennsylvania's anti-trafficking law.[4]

On the one hand, state law favors broad insurance coverage.  The Pennsylvania Supreme Court instructs us that "the duty to defend is triggered 'if the factual allegations of the complaint on its face encompass an injury that is actually or *potentially* within the scope of the policy.'"  *Moore*, 228 A.3d at 267–68 (quoting *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015)); *see also Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 (3d Cir. 2022) ("[T]he underlying complaint's allegations are assumed to be true and are liberally construed in favor of coverage.").  If "any doubt or ambiguity exists," we resolve the issue "in favor of coverage," and to the extent there remain "undetermined facts that might impact on coverage, the insurer has a duty to defend until the 'claim is narrowed to one patently outside the policy coverage.'"

---

[4] The duty to defend "carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy." *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997).

*Moore*, 228 A.3d at 268 (quoting *Mace v. Atl. Refin. & Mktg. Corp.*, 785 A.2d 491, 500 (Pa. 2001) (Saylor, J., dissenting)).

The presumption in favor of coverage is evidenced by the way Pennsylvania courts interpret common terms contained in insurance contracts. For example, many such contracts explicitly state that they do not cover damage caused by an insured's "intentional" acts. *Gen. Accident Ins. Co. of Am. v. Allen*, 708 A.2d 828, 832 (Pa. Super. Ct. 1998).[5] According to the state courts, these exclusions should not be interpreted too broadly. Even if an insured "intended" to undertake a particular act, coverage still applies unless the resulting damage was itself "intentionally caused." *Eisenman v.*

---

[5] So too here: Each insurance policy excludes injuries "expected or intended from the standpoint of the insured," App. 306, 451, 653, 797, 958, 1145, 1219, 1294, but Roosevelt does not suggest this exclusion is applicable, and with good reason. As we read the underlying complaints in this case, the allegations, if proven at trial, would establish only recklessness, but under Pennsylvania law, injury caused by "negligent[], careless[], and reckless[]" action does not come within the exclusion for "expected or intended" injuries. *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 266 (Pa. 2020). Instead, for that exclusion to apply, "the insured [must have] acted even though he was *substantially certain* that an injury generally similar to the harm which occurred would result." *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 991 (Pa. Super. Ct. 1986) (emphasis added); *see also id.* (noting that "intentional or expected are synonymous for purposes of insurance exclusionary clauses"); *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 460 (3d Cir. 1993) (recognizing that under Pennsylvania law, "the insured must have *specifically intended to cause harm*" to trigger the "expected or intended" injury exclusion (emphasis added)).

ACE's umbrella insurance policy, on the other hand, specifically excludes injuries resulting from (1) the abuse or molestation of minors in the care, custody, or control of Roosevelt and (2) negligent employment or investigation of, or failure to report on, employees whose conduct would be excluded under (1). It is unlikely this exclusion applies, however, as it states that it is "no broader" than the underlying insurance policies, App. 1158, 1235, 1310 (capitalization altered), and here, the underlying Samsung and Nationwide policies lack a similar exclusion. Regardless, the exclusion does not implicate Samsung and Nationwide's duty to defend.

7

*Hornberger*, 264 A.2d 673, 674 (Pa. 1970); *see also United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 987–88 (Pa. Super. Ct. 1986). The threshold for intent is high: An insured "intend[ed]" an injury only if he "desired to cause the consequences of his act" or "acted knowing that such consequences were substantially certain to result."[6] *Elitzky*, 517 A.2d at 989; *see also Erie Ins. Exch. v. Muff*, 851 A.2d 919, 927–28 (Pa. Super. Ct. 2004). Considering this strong presumption in favor of coverage, we are hesitant to relieve the Insurers of their duty to defend here.

On the other hand, state public policy may warrant such relief. Pennsylvania law recognizes a policy-based exception to the duty to defend where an underlying complaint alleges criminal conduct so repugnant to society that it would violate "overriding public policy" for an insurer to defend the insured, even if the insured is not alleged to have "intended by his act to produce the damage which did actually occur." *Greenfield*, 855 A.2d at 866. An insurer has no duty to defend where, for example, the underlying complaint alleges injuries stemming from the insured's criminal acts involving a Schedule I controlled substance, *id.*, or where the injuries resulted from the insured's shooting spree, *Germantown Ins. Co. v. Martin*, 595 A.2d 1172, 1175 (Pa. Super. Ct.

---

[6] Nevertheless, "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). Even if, as here, a complaint formally asserts a cause of action based in negligence, a court must examine the pleading's factual allegations to assess whether they encompass purely intentional injury before permitting an insurer to disclaim coverage.

1991). This is true even when the injuries resulting from those acts were "unintended or unexpected," occurring by "accident or negligence." *Greenfield*, 855 A.2d at 866.

Here, state law strongly condemns those who enable sex trafficking. The Pennsylvania legislature criminalizes enabling and knowingly benefitting from sex trafficking, 18 Pa. Cons. Stat. § 3011, offering one indication that public policy is sufficiently "dominant" to abrogate the duty to defend, *Greenfield*, 855 A.2d at 867 (quoting *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 207 (Pa. 2002)). In addition, Pennsylvania courts have repeatedly held that the sexual abuse of a child—an act encompassed by the underlying allegations here—is an "exceptional" type of crime. *Aetna Cas. & Sur. Co. v. Roe*, 650 A.2d 94, 102 n.10 (Pa. Super. Ct. 1994); *Greenfield*, 855 A.2d at 863; *accord Aetna Life & Cas. Co. v. Barthelemy*, 33 F.3d 189, 192 (3d Cir. 1994) (noting that "sexual abuse of a child is a uniquely harmful act" calling for a different standard of intent). Such a "clear enunciation of public policy" supports a determination that the Insurers owe Roosevelt no duty to defend. *Greenfield*, 855 A.2d at 869.[7]

---

[7] Although the women who were trafficked bring their state law claims under a theory of negligence, this Court believes that the facts alleged, if proven at trial, rise to the level of "knowing" or "reckless" conduct, in violation of 18 Pa. Cons. Stat. § 3011(a). Those facts include that the trafficking victims—one of whom was only 14—wore sexually revealing clothing, were accompanied by men while walking around the motel premises, had men loitering outside their rooms, were "visibly treated in an aggressive manner by traffickers," and "exhibited fear and anxiety" while on motel premises. App. 96, 127, 186, 242. They also include that a Roosevelt security guard saw men buying sex from young girls accompanied by aggressive "pimps" that would hit them, App. 243; Roosevelt front desk staff and housekeeping were explicitly told by at least one victim that she was performing commercial sex; a Roosevelt security guard would text one of

Because deciding this issue would require us to weigh Pennsylvania's strong presumption of insurance coverage against its clear public policy against sex trafficking, we cannot predict how the Pennsylvania Supreme Court would rule, making this case appropriate for certification.

### 2. Pennsylvania's Interest in the Issue

Certification is also appropriate because deciding the question of whether state public policy abrogates the Insurers' duty to defend would require that we "weigh competing state public policy interests," *Defreitas*, 29 F.4th at 142, including Pennsylvania's interest in maintaining its strong presumption in favor of insurance coverage, its interest in deterring abhorrent criminal conduct, and its interest in securing compensation for victims of trafficking. Such balancing is "most appropriate[ly]" left for Pennsylvania's high court. *Id.*

### 3. Public Importance

This case's outsized public importance also favors certification. As Amici point out, hotels and motels serve as central sites for almost three-quarters of sex trafficking cases reported to the National Human Trafficking Hotline, and thus, the liability hotels and their insurers face greatly affects the viability of these criminal enterprises. For this reason, both the federal government and Pennsylvania criminalize not only "recruit[ing],"

---

the women staying at the motel to warn of police activity; and the motel rooms in which the girls were trafficked were littered with used condoms and condom wrappers. We understand these allegations, if proven, to establish at least recklessness, which would violate Pennsylvania's anti-trafficking law and require us to answer the questions that are the subject of this certification petition.

10

"transport[ing]," and "solicit[ing]" sex trafficking victims, but also "harbor[ing]" and "maintain[ing]" them, and knowingly "benefit[ting]" from such activities. 18 U.S.C. § 1591(a); 18 Pa. Cons. Stat. § 3011(a).

A decision here will also bear on the relative costs borne by victims of trafficking and the hospitality industry as a whole. Should we side with the Insurers, Amici trafficking victims argue, they and future victims may be unable to obtain meaningful compensation for their injuries. For their part, Amici insurance industry groups also emphasize this case's importance, asserting that upholding the duty to defend here will increase insurance premiums for "*all* businesses, including the law-abiding ones." Nat'l Ass'n of Mut. Ins. Cos. et al. Amicus Br. 14. The implications of any decision are clearly "far broader than our arriving at a proper resolution of the case at bar." *Chauca v. Abraham*, 841 F.3d 86, 94 (2d Cir. 2016).

    4.    Judicial Economy

Finally, judicial economy favors certification. Our district courts have repeatedly confronted the question of whether state public policy abrogates the duty to defend in comparable situations, *see Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 320 F. Supp. 3d 636 (E.D. Pa. 2018); *Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, No. 20-cv-1607, 2021 WL 4123915 (E.D. Pa. Sept. 9, 2021); *Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, No. 20-cv-289, 2021 WL 3164292 (E.D. Pa. July 27, 2021); *UFVS Mgmt. Co.*, 2023 WL 2574971, and similar suits are likely to crop up in the future, *see* Nat'l Ass'n of Mut. Ins. Cos. et al. Amicus Br. 5 (noting that, by 2020, there were at least 38 ongoing federal

lawsuits brought by victims of sex trafficking against hotel owners).  As the issue is "likely to recur," certification is proper.  *Defreitas*, 29 F.4th at 142.

  B. *Requisite Intent*

  Should the Pennsylvania Supreme Court determine that the state possesses a "dominant public policy" capable of abrogating an insurer's duty to defend against sex trafficking–related allegations, *Greenfield*, 855 A.2d at 867 (quoting *Burstein*, 809 A.2d at 207), there remains a question of intent, namely, whether 18 Pa. Cons. Stat. § 3011's threshold mental states of "reckless[] disregard[]" to the fact of sexual servitude and "knowingly benefit[ting] from" such servitude suffice to abrogate that duty.  In other words, do the Insurers owe Roosevelt a duty to defend if the underlying complaints are read to allege "reckless" and/or "knowing" conduct, or does the duty persist unless the allegations describe intentional behavior on the part of the motel?  Because public policy only rarely abrogates the duty to defend, Pennsylvania courts have had little occasion to distinguish between levels of intent, leaving us with scant precedent on which to base an opinion.  For this reason, and because, as described above, the issue is important to both the state and the public, certification of this related question is appropriate.

**III. Questions for Consideration**

  Accordingly, we certify the following questions of law to the Supreme Court of Pennsylvania:

> Does Pennsylvania have an "overriding public policy" against sex trafficking—as found regarding Schedule I controlled substances in *Minnesota Fire & Casualty Co. v. Greenfield*, 855 A.2d 854 (Pa. 2004), and as evinced by the state's anti-trafficking law, 18 Pa. Cons. Stat. § 3011(a)—such that an insurer's duty to defend and/or indemnify is

abrogated when an insured is alleged to have enabled or profited from such trafficking?

If yes, is that duty abrogated whenever the insured's alleged conduct would constitute a violation of 18 Pa. Cons. Stat. § 3011(a), i.e., when the insured displayed an alleged mens rea of (1) "reckless[] disregard[]" that a person will be subjected to sexual servitude or (2) "knowingly benefit[ting] financially" from such activity, or is the duty abrogated only when an insured's conduct was allegedly "intentional," *cf. Erie Ins. Exch. v. Moore*, 228 A.3d 258 (Pa. 2020)?

We shall retain jurisdiction of the appeal pending resolution of this certification.

By the Court,

/s/ Cheryl Ann Krause
Circuit Judge

Dated: August 12, 2024
Tmm/cc: All Counsel of Record

A True Copy:

Patricia S. Dodszuweit, Clerk